**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HOPSCOTCH CORP.,** a Delaware corporation, and **HOPSCOTCH HEALTH OF NEW JERSEY PC** a New Jersey professional corporation | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:22 cv 5420 |
| v. | ) ) | **Jury Trial Demanded** |
| **HOPSCOTCH HEALTHCARE, INC.,** an Illinois corporation | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Hopscotch Corp. and Hopscotch Health of New Jersey PC (collectively, "Hopscotch" or "Plaintiffs") allege as follows for their Complaint against Defendant Hopscotch Healthcare, Inc. ("Hopscotch Healthcare" or "Defendant"):

### INTRODUCTION

1.     This is an action for infringement of Plaintiffs' HOPSCOTCH service mark under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for common law trademark infringement and unfair competition, all arising from the Defendant's unauthorized use of the mark HOPSCOTCH and HOPSCOTCH HEALTHCARE in connection with the marketing, advertising, promotion, offering for sale, and/or the provision of healthcare related services in violation of Plaintiffs' trademark rights. Plaintiffs seek injunctive and monetary relief.

1

## PARTIES

2.     Hopscotch Corp. is a Delaware corporation with its principal place of business located at 447 Broadway, 2nd Fl., 687 New York, New York 10013. Hopscotch Corp. is the owner of a Federal Trademark Application for the HOPSCOTCH service mark and serves as the managed services organization for plaintiff Hopscotch Health of New Jersey PC.

3.     Hopscotch Health of New Jersey PC is a New Jersey professional corporation with its principal place of business located at 447 Broadway, 2nd Fl., 687 New York, New York 10013. Hopscotch Health of New Jersey provides both in-person pediatric mental behavioral healthcare and operates a telehealth platform that connects providers of pediatric behavioral healthcare services with patients, families, and guardians in need of behavioral healthcare.

4.     Hopscotch has and uses as part of its business operations the url www.joinhopscotch.com

5.     Defendant Hopscotch Healthcare, Inc. is an Illinois corporation with its principal place of business located at 500 W. Madison, Suite 1000, Chicago, IL 60661, and uses the url www.hellohopscotch.com.

## JURISDICTION & VENUE

6.     This Complaint sets forth claims for federal trademark infringement arising under 15 U.S.C. § 1051 *et seq.*, as amended (the "Lanham Act"), false designation of origin, and trademark dilution under the Lanham Act, 15 U.S.C. § 1125.

7.     This Court has jurisdiction over the subject matter of these claims and the parties under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 (federal question jurisdiction over actions arising under the Lanham Act) and 28 U.S.C. § 1338(a) and (b) (actions arising under an Act of Congress relating to trademarks and to related unfair competition claims). In addition, this Court may

2

exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to Plaintiffs' state law claims.

8.     This Court has personal jurisdiction over the Defendant as it is at home in the State of Illinois, and all of its actions giving rise to the claims herein took place in the State of Illinois.

9.     Venue is proper under 28 U.S.C. § 1391(b) as the Defendant resides in this this judicial district.

**FACTUAL BACKGROUND**

10.    Hopscotch was founded in 2019 to provide a lifeline for families struggling to access quick and effective behavioral healthcare for their children and teens in need of counseling and mental health treatment.

11.    Children and families deserve excellent care for their emotional health, and they are struggling to access it. Hopscotch helps bridge the access chasm, helping therapists meaningfully connect with children, teens, and families that need their help.

12.    Hopscotch takes a modernized approach to pediatric behavioral healthcare that leverages technology to quickly connect providers and patients, bypassing an historically months' long waiting periods during which patients' mental health could continue to deteriorate.

13.    Hopscotch's platform focuses on a highly-vetted network of diverse providers, coming from diverse backgrounds, and with diversified specialties that provide both in-person and telehealth therapy sessions to Hopscotch's patients.

14.    Hopscotch Corp. is the owner of the federal trademark application Serial No. 97435371 for the mark "HOPSCOTCH," and the related goodwill and pre-existing common law rights connected with that trademark and others (the "HOPSCOTCH Mark"). Hopscotch Health

3

of New Jersey PC is the licensee of the HOPSCOTCH Mark from Hopscotch Corp., which is a management services organization to the independent affiliated physicians' practice.

15.     Hopscotch Corp., as part of its role as the management services organization for Hopscotch Health of New Jersey PC, uses the HOPSCOTCH Mark in advertising and branding for the benefit of Hopscotch Health of New Jersey PC.

16.     Plaintiffs are, for the purpose of trademark law, "related parties" as that term is defined by 15 U.S.C. § 1127 and TMEP 1201.03.

17.     Plaintiffs have used the HOPSCOTCH Mark in commerce throughout the United States continuously since at least as early as December 2019 in connection with the provision, marketing, advertising, and promotion of its pediatric behavioral healthcare services and promotion of Plaintiffs' pediatric behavioral healthcare services and platform.

18. As a result of Hopscotch's widespread, continuous, and exclusive use of the HOPSCOTCH Mark to identify pediatric behavioral healthcare services as their source, Plaintiffs own valid and subsisting federal statutory and common law rights to the HOPSCOTCH Mark.

19. Plaintiffs' HOPSCOTCH Mark is distinctive to both the consuming public and Plaintiffs' trade.

20. Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting the pediatric behavioral healthcare services provided under the HOPSCOTCH Mark, including through Hopscotch's own webpage, social media such as Facebook®, Instagram®, Twitter®, and Internet-based advertising services such as Google® AdWords and Google® Display Network, community engagement, and features in several publications including *Business Insider*, *Behavioral Health Business*, *Fortune*, and others.

21. Plaintiffs also work with several local organizations including schools, pediatricians' offices, community agencies, hospitals, and employers which has further developed the goodwill in the HOPSCOTCH Mark. The relationships built with these organizations have been cultivated and grown over several years.

22. During the period from 2019 to 2022, Plaintiffs have expended in excess of $300,000.00 on the marketing, advertising, and promotion of the pediatric behavioral healthcare services provided under the HOPSCOTCH Mark.

23. Plaintiffs offer and provide pediatric behavioral healthcare services under the HOPSCOTCH Mark to the general public. For example, Plaintiffs provide the pediatric behavioral healthcare services under the HOPSCOTCH Mark through its website www.joinhopscotch.com and the services are available to any and all persons residing in states in which Hopscotch Health of New Jersey PC maintains licensed providers.

24. As a result of Plaintiffs' expenditures and efforts, the HOPSCOTCH Mark has come to signify the high quality of the pediatric behavioral healthcare services provided by Plaintiffs and has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiffs.

### DEFENDANT'S INFRINGEMENT OF PLAINTIFFS' TRADEMARK

25. Defendant Hopscotch Healthcare has infringed Plaintiffs' HOPSCOTCH Mark by its use of the term HOPSCOTCH to identify its company both under the confusingly similar trade name "Hopscotch Health" and the corporate naming of its company Hopscotch Healthcare, Inc. (the "Infringing Mark").

26.     Defendant operates under the confusingly similar name "Hopscotch Health" providing telehealth services, including behavioral health services, to patients (including children) in rural communities.

27.     Defendant began operating under the Infringing Mark without Plaintiffs' authorization and well after Plaintiffs acquired protectable exclusive rights in the HOPSCOTCH Mark. For example, as is confirmed by Defendant's own LinkedIn page (screenshot below), Defendant's first use of the Infringing Mark in connection with telehealth services began in 2021, well after Plaintiffs began operating under the HOPSCOTCH Mark in 2019.



FIRM:57021808v6

28.     The Infringing Mark adopted and used by Defendant is confusingly similar to Plaintiffs' HOPSCOTCH Mark. The Infringing Mark is identical to Plaintiffs' HOPSCOTCH Mark, and both Plaintiffs and Defendant use "HOPSCOTCH" in connection with the provision of healthcare services.

29.     The telehealth services Defendant has provided, marketed, advertised, promoted, offered for sale, and sold and/or those telehealth services it intends to provide, market, advertise, promote, offer for sale, and sell under the Infringing Mark are directly competitive with both Plaintiffs' in-person and telehealth services.

30. Upon information and belief, Defendant has or will provide, market, advertise, promote, offer for sale, and sell its telehealth services under the Infringing Mark to the same customers and through the same channels of trade as Plaintiffs.

31. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's telehealth services and have deceived and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's telehealth services originate from, are associated, or affiliated with, or otherwise authorized by Plaintiffs.

32. Indeed, Defendant's conduct has already resulted in instances of actual confusion. For example, on September 12, 2022, Plaintiffs' CEO received an email from an individual who thought she was applying for a position with the Defendant. The email included a cover letter and resume and was sent in hopes of furthering the sender's chances of employment with the Defendant.

33. If someone who is interested in employment with the Defendant cannot even discern the two companies, consumers stand little to no chance at the same.

34. Upon information and belief, Defendant's use of the Infringing Mark is willful with the deliberate intent to trade on the goodwill of Plaintiffs' HOPSCOTCH Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiffs' in-person and telehealth services to Defendant.

35. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs and to their valuable reputation and goodwill with the consuming public for which Plaintiffs have no adequate remedy at law.

### DEFENDANT REFUSE TO CEASE AND DESIST

36. On May 31, 2022, Plaintiffs, through the undersigned counsel, sent a cease and desist letter to Defendant, putting it on notice of its violation of the Plaintiffs' trademark rights. A true and correct copy of the May 31, 2022, letter is attached as **Exhibit A** to this Complaint.

37. Pursuant to that letter, Plaintiffs demanded that Defendant cease and desist from its improper and infringing conduct be ceasing all use of the HOPSCOTCH Mark.

38. On June 23, 2022, counsel for the Defendant responded by email stating that her client would respond by July 1, 2022. Despite this representation, Defendant did not respond on or before July 1, 2022.

39. As a result, the undersigned counsel followed up with Defendant's counsel on July 5, 2022, by email and again by voicemail on July 21, 2022. Defendant's counsel did not respond to either communication.

40. Subsequently, on July 26, 2022, Plaintiffs sent a second formal cease and desist letter, again through the undersigned counsel, demanding a formal response no later than August 9, 2022. A true and correct copy of the July 26, 2022, letter is attached as **Exhibit B** to this Complaint.

41. Defendant responded on August 9, 2022, and, instead of confirming it would cease its infringing use, brazenly made unfounded allegations of fraud against the Plaintiffs citing to public statements made by Plaintiffs on their website.

42. The undersigned wrote to Defendant for a third time on August 12, 2022, explaining the baseless nature of Defendant's allegation and yet again demanding that Defendant cease its infringing use. Plaintiffs gave the Defendant until August 22, 2022, to respond. A true and correct copy of the August 12, 2022, letter is attached as **Exhibit C** to this Complaint.

43. On August 22, 2022, Defendant seemingly changed its tune, writing to Plaintiffs' counsel and asking whether the clients could have some form of direct communication, presumably to find some sort of reasonable resolution of the dispute.

44. The undersigned again wrote to Defendant's counsel on August 25, 2022, asking defense counsel to provide a structure of the proposed discussion and what the Defendant envisioned as a potential solution to its infringing activity. A true and correct copy of the August 25, 2022, letter is attached as **Exhibit D** to this Complaint.

45. As of the date of this Complaint, neither Defendant nor its counsel has responded.

46. Defendant has not ceased any of its infringing activity and continues to use a confusingly similar variation of the HOPSCOTCH Mark in derogation of Plaintiffs' trademark rights.

## COUNT I
### (INFRINGEMENT OF TRADEMARK IN VIOLATION OF SECTION 43(A) OF THE LANHAM ACT)

47.     Plaintiffs incorporate the preceding allegations as though fully stated herein.

48.     Defendant's use of the term "Hopscotch" as alleged herein infringes the HOPSCOTCH Mark, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

49. Through their use and promotion of the HOPSCOTCH Mark, Plaintiffs have obtained the exclusive right to use such mark in commerce in connection with its goods and services, including the provision of both in-person and telehealth services.

50. Defendant has, "in connection with [its] services . . . use[d] in commerce", the Infringing Mark which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [Defendant] with [Plaintiffs]." *See* 15 U.S.C. § 1125.

51. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's services and is likely to cause consumers to believe, contrary to fact, that Defendant's services are provided, sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendant is in some way affiliated with or sponsored by Plaintiffs.

52. Indeed, Defendant's unauthorized use of the Infringing Mark has in fact already caused such confusion, mistake, or deception.

53. Defendant's conduct as set forth herein constitutes a violation of Section 43(a) of the Lanham Act.

54. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs.

55. Given that Defendant was repeatedly placed on formal notice that its use of the Infringing Mark infringed upon the Plaintiffs' rights in the HOPSCOTCH Mark, and that Defendant has continued to use the Infringing Mark despite that notice, Defendant's violation was, and continues to be, willful.

FIRM:57021808v6

56. Both the public and Plaintiffs have been, and continue to be, irreparably harmed as a result of the Defendant's conduct set forth above.

57. In addition, Plaintiffs have been, and continue to be, damaged monetarily by Defendant's wrongful conduct in an amount to be determined at trial.

58. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT II
### (FALSE DESIGNATION OF ORIGIN IN VIOLATION OF SECTION 43(A) OF THE LANHAM ACT)

59. Plaintiffs incorporate the preceding allegations as though fully stated herein.

60. Defendant's use of the term Infringing Mark falsely designates the origin of its products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

61. Through their use and promotion of the HOPSCOTCH Mark, Plaintiffs have obtained the exclusive right to use such mark in commerce in connection with its goods and services, including the provision of both in-person and telehealth services.

62. Defendant has, "in connection with [its] services . . . use[d] in commerce", the Infringing Mark which not only "is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of [Defendant's] services" by the Plaintiffs, but has in fact already caused such confusion, mistake, or deception. *See* 15 U.S.C. § 1125.

63. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

64. Defendant's conduct as set forth above constitutes a violation of Section 43(a) of the Lanham Act.

65. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs.

66. Given that Defendant was repeatedly placed on formal notice that its use of the Infringing Mark infringed upon the Plaintiffs' rights in the HOPSCOTCH Mark, and that Defendant has continued to use the Infringing Mark despite that notice, Defendant's violation was, and continues to be, willful.

67. Both the public and Plaintiffs have been, and continue to be, irreparably harmed as a result of the Defendant's conduct set forth above.

68. In addition, Plaintiffs have been, and continue to be, damaged monetarily by Defendant's wrongful conduct in an amount to be determined at trial.

69. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
### (COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION)

70. Plaintiffs incorporate the preceding allegations as though fully stated herein.

71. Plaintiffs have exclusive ownership of the HOPSCOTCH Mark.

72. Defendant's use of the Infringing Mark constitutes common law trademark infringement and unfair competition.

73. By engaging in the acts described in this complaint, Defendant has created actual confusion and/or a likelihood of confusion about the source or sponsorship of its goods and services. Defendant's conduct has caused or is likely to cause customers to be confused as to whether Plaintiffs are the source of Defendant's telehealth services or confused in thinking that Defendant is otherwise affiliated with or sponsored by Plaintiffs.

74. By engaging in the acts described above, Defendant has attempted to encroach upon the Plaintiffs' business by using a confusingly similar trademark.

75. Upon information and belief, Defendant's use of a confusingly similar trademark and encroachment upon the Plaintiffs' business was intentional and with knowledge of Plaintiffs' rights. Plaintiffs are suffering immediate and irreparable harm to their brand and goodwill as a result of Defendant's conduct. Any sales of Defendant's telehealth services under the deceptively similar Infringing Mark will also cause Plaintiffs monetary damages in addition to the irreparable harm to its brand and goodwill.

76. Plaintiffs have suffered, and, if Defendant is not enjoined, Plaintiffs will continue to suffer, irreparable harm from Defendant's use of the Infringing Mark, for which Plaintiffs have no legal remedy.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. Issue process to be served on Defendant Hopscotch Healthcare, Inc.;

2. Empanel a jury to resolve all issues triable;

3. Enter judgment in favor of Plaintiffs and against Defendant for violating Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

4. Enter judgment in favor of Plaintiffs and against Defendant for violating Plaintiffs' common law trademark rights and committing unfair competition by using the Infringing Mark

in violation of Plaintiffs' rights in the HOPSCOTCH Mark for use in connection with both in-person and telehealth services;

6.      Grant an injunction preliminarily and permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.      providing, selling, marketing, advertising, promoting, or authorizing any third party to provide, sell, market, advertise or promote, both in-person and telehealth services under the Infringing Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' HOPSCOTCH Mark;

b.      engaging in any activity that infringes Plaintiffs' rights in the HOPSCOTCH Mark through the use of the name "HOPSCOTCH" or any other similar variation thereof;

c.      engaging in any activity constituting unfair competition with Plaintiffs through the use of the name "HOPSCOTCH" or any other similar variation thereof;

d.      making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendant's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs; or (ii) Plaintiffs' services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant; using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols,

14

devices, or trade dress that falsely associate such business, goods and/or services with Plaintiffs or tend to do so;

e.      registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the HOPSCOTCH Mark or any other mark that infringes or is likely to be confused with Plaintiffs' HOPSCOTCH Mark, or any goods or services of Plaintiffs, or Plaintiffs as their source; and

f.      aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (e).

7.      Grant such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with Plaintiffs' services;

8.      Direct Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, to immediately cease all provision, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the mark HOPSCOTCH or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' HOPSCOTCH

Mark, and to direct all providers, distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that, provide, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the provision, display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, paper goods, bags, containers, advertisements, signs, displays, and other materials featuring or bearing the mark HOPSCOTCH or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiffs' HOPSCOTCH Mark, and to immediately remove them from public access and view;

9. Direct that Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, recall and deliver up for destruction all advertisements, signs, displays, and other related materials incorporating or bearing the mark HOPSCOTCH or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiffs' HOPSCOTCH Mark;

10. Direct, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendant to file with the court and serve upon Plaintiffs' counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant have complied therewith;

11. Award Plaintiffs an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

12.     Direct that Defendant account to and pay over to Plaintiffs all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiffs for the damages caused thereby;

13.     Award Plaintiffs punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement;

14.     Declare that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and award Plaintiffs their costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

15.     Award Plaintiffs interest, including prejudgment and post-judgment interest, on the foregoing sums; and

16.     Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 4, 2022                    **EPSTEIN BECKER & GREEN, P.C.**

By: _s/ Peter A. Steinmeyer_
Peter A. Steinmeyer
(psteinmeyer@ebglaw.com)
Brenna R. McLean (brmclean@ebglaw.com)
227 W. Monroe Street, Suite 3250
Chicago, Illinois 60606
Tel: 312-499-1400

James P. Flynn
One Gateway Center
Newark, New Jersey 07102-5311
Tel: 973-642-1900
jflynn@ebglaw.com

Kevin T. Elkins (*pro hac vice* forthcoming)
1222 Demonbreun St., Suite 1400
Nashville, TN 37203
Tel: 615-564-6060
kelkins@ebglaw.com
*Attorneys for Plaintiffs*

17

# EXHIBIT A



**EPSTEIN
BECKER
GREEN**

Attorneys at Law

James P. Flynn
t  973 639.8285
f  973 639.8931
JFlynn@ebglaw.com

May 31, 2022

<u>VIA FEDEX AND US MAIL</u>

Ms. Kristin Myers
Chief Executive Officer
Hopscotch Health
500 W. Madison
Suite 1000
Chicago, IL 60661

Re: Cease and Desist Infringement of US Trademark Application, Serial No. 97435371
<u>and Earlier Established Common Law Rights</u>

Dear Ms. Myers:

This firm represents Hopscotch Health of NJ P.C., a New Jersey professional corporation, and Hopscotch Corp., a Delaware corporation, the latter of which owns federal trademark application Serial No. 97435371 for the mark "HOPSCOTCH" and the related goodwill and pre-existing common law rights connected with that trademark and others. Our client also owns and operates in connection with HOPSCOTCH a website at https://www.joinhopscotch.com/ that describes in detail its business and services. As noted in the referenced application, our client has been using the trademark HOPSCOTCH in United States since at least as early as December 2019. We write on our client's behalf to ask that you cease and desist in promoting the same or similar services using the confusingly similar phrase/mark HOPSCOTCH HEALTH and Hopscotch Healthcare, Inc., *see, e.g.*, https://www.hellohopscotch.com/.

Indeed, as admitted in your company's LinkedIn profile, your company was not founded until 2021, which is at least thirteen or more months after our clients began using the HOPSCOTCH mark in the same, similar and overlapping channels of trade:

Kristin Myers
May 31, 2022
Page 2



[at https://www.linkedin.com/company/hellohopscotch]

As this makes clear, your use in 2021 and after leaves my clients as the senior users here of HOPSCOTCH, and your inferior, junior use in the same or closely related channels of trade confuses the market, infringes on our clients' mark and constitutes unfair competition.

My clients have every right, both statutorily and at common law, to prevent confusion and unfair competition occasioned by a newcomer's use of a mark using the same principal combination of words in my client's mark. *China Healthways Institute, Inc. v. Wang*, 491 F.3d 1557, 83 U.S.P.Q.2d 1223 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 661 (2007) (noting that "It is incorrect to compare marks by eliminating portions thereof and then simply comparing the residue."). Indeed, your use essentially admits such phrasing, on its website and elsewhere, that it is being used as a trademark. Promptly addressing to this matter, and confirming within ten days that you will so cease and desist, is most appreciated, as our client wishes to address this matter amicably and without formal legal process if possible. Otherwise liability for trademark infringement and responsibility to pay damages as well as attorneys' fees may be visited upon you. Our clients reserve all rights and claims should more formal measures be needed to compel compliance.

Kristin Myers
May 31, 2022
Page 3

Thank you for your attention.

Very truly yours,

James P. Flynn

**Margaret Langlais**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Wednesday, June 1, 2022 11:38 AM |
| **To:** | Margaret Langlais |
| **Subject:** | FedEx Shipment 273747056663: Your package has been delivered |

*** EXTERNAL EMAIL ***



# Hi. Your package was delivered Wed, 06/01/2022 at 10:29am.



Delivered to 500 W MADISON ST 1000, CHICAGO, IL 60661
Received by M.DEMARCO

**OBTAIN PROOF OF DELIVERY**

## Personal Message

PSShip eMail Notification

1

| | |
|---|---|
| **TRACKING NUMBER** | 273747056663 |
| **FROM** | Epstein Becker & Green, P.C. |
| | Four Gateway Ctr |
| | 3th Floor |
| | Newark, NJ, US, 07102 |
| **TO** | Hopscotch Health |
| | Kristin Myers, CEO |
| | 500 W MADISON ST STE 1000 |
| | CHICAGO, IL, US, 60661 |
| **REFERENCE** | 089914.00003.00283 |
| **SHIPPER REFERENCE** | 089914.00003.00283 |
| **SHIP DATE** | Tue 5/31/2022 06:37 PM |
| **DELIVERED TO** | Mailroom |
| **PACKAGING TYPE** | FedEx Envelope |
| **ORIGIN** | Newark, NJ, US, 07102 |
| **DESTINATION** | CHICAGO, IL, US, 60661 |
| **SPECIAL HANDLING** | Deliver Weekday |
| | ASR |
| **NUMBER OF PIECES** | 1 |
| **TOTAL SHIPMENT WEIGHT** | 0.50 LB |
| **SERVICE TYPE** | FedEx Priority Overnight |



# Get the FedEx® Mobile app

Create shipments, receive tracking alerts, redirect packages to a FedEx retail location for pickup, and more from the palm of your hand - **Download now**.



## This tracking update has been requested by:

| | |
|---|---|
| **Company name:** | Epstein Becker & Green, P.C. |
| **Name:** | James Flynn |
| **Email:** | jflynn@ebglaw.com |

**FOLLOW FEDEX**

     

✉ Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 10:38 AM CDT 06/01/2022.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above.

Standard transit is the date and time the package is scheduled to be delivered by, based on the selected service, destination and ship date. Limitations and exceptions may apply. Please see the FedEx Service Guide for terms and conditions of service, including the FedEx Money-Back Guarantee, or contact your FedEx Customer Support representative.

# EXHIBIT B



**EPSTEIN
BECKER
GREEN**

Attorneys at Law

James P. Flynn
t 973 639.8285
f 973 639.8931
JFlynn@ebglaw.com

July 26, 2022

VIA EMAIL AND US MAIL

Katherine Todd
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Katherine.todd@bassberry.com

Re: Second Cease and Desist Infringement of US Trademark Application, Serial No. 97435371 and Earlier Established Common Law Rights

Dear Ms. Todd:

As you know, this firm represents Hopscotch Health of NJ P.C. and Hopscotch Corp., the latter of which owns federal trademark application Serial No. 97435371 for the mark "HOPSCOTCH" and the related goodwill and pre-existing common law rights connected with that trademark and others.

On May 31, 2022, I wrote to your client Hopscotch Healthcare Inc. asking that it cease and desist promoting the same or similar services as our clients using the confusingly similar phrase/mark HOPSCOTCH HEALTH and Hopscotch Healthcare, Inc. On June 23, 2022, you responded by email that your client would respond by July 1, 2022.

We are now more than three weeks beyond the represented date of response and have heard nothing from you or your client, despite follow up communications from me to you in writing on July 5, 2022 and in writing and via voicemail on July 21, 2022. Nor has your client ceased its use of the HOPSCOTCH HEALTH and Hopscotch Healthcare, Inc. marks. If you are no longer representing Hopscotch Healthcare Inc., please advise us immediately.

Assuming you still represent Hopscotch Healthcare Inc., please note that my clients will not sit waiting much longer for a response before taking action.

July 26, 2022
Page 2

       If we do not hear from you or your client within (10) business days—on or before August 9, 2022—my clients intend to seek other avenues of recovery including, but not limited to, litigation in Federal Court for injunctive relief, to recover damages for trademark infringement, as well as attorneys' fees based on your client's willful infringement.

                 Very truly yours,

                 James P. Flynn

cc: Kevin Elkins (via email)
    David Weiss (via email)

# EXHIBIT C



**EPSTEIN
BECKER
GREEN**

Attorneys at Law

James P. Flynn
t  973 639.8285
f  973 639.8931
JFlynn@ebglaw.com

August 12, 2022

VIA EMAIL katherine.todd@bassberry.com AND US MAIL

Katherine Todd
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Katherine.todd@bassberry.com

Re:  Reply to August 9th Response To Cease and Desist Letters Decrying Infringement of
US Trademark Application, Serial No. 97435371 and Earlier Established Common
Law Rights

Dear Ms. Todd:

As you know, this firm represents Hopscotch Health of NJ P.C. and Hopscotch Corp., the latter of which owns federal trademark application Serial No. 97435371 for the mark "HOPSCOTCH" and the related goodwill and pre-existing common law rights connected with that trademark and others.

We appreciate that Hopscotch Healthcare Inc. finally responded on August 9, 2022 to my clients' previous demands (dated May 31, 2022 and July 26, 2022) that Hopscotch Healthcare Inc. cease and desist promoting the same or similar services as our clients by using the confusingly similar phrase/mark HOPSCOTCH HEALTH and Hopscotch Healthcare, Inc.  We note with great interest that the August 9th response letter does not deny that your client was not founded, and did not begin using its infringing mark, until 2021, giving my clients both use and application priority. Your client also does not deny, and indeed seems to affirmatively argue, that your client's use is in the same, similar, and overlapping closely related channels of trade to my clients' use.  The August 9th letter also does not deny that infringement can occur where confusingly similar marks are used in connections different, but related, goods or services.  Nor could it.  TMEP §1207.01(a).

Instead, the August 9th response makes unfounded allegations of fraud, citing to direct and public statements that our clients made at https://www.joinhopscotch.com/ but ignoring that such statements were repeated within the specimen submitted to the USPTO (see Specimen at USPTO TSDR Case Viewer, pages 9, 16, 20, 27, 31, 38, 42 and 48 of 48), which no less than eight times

Epstein Becker & Green, P.C. | One Gateway Center | Newark, NJ 07102 | t 973.642.1900 | f 973.642.0099 | ebglaw.com

FIRM:56761525v1

August 12, 2022
Page 2

made crystal clear that medical services were being provided under the name Hopscotch Health of NJ P.C., a client that we expressly informed you and your client that we represented in and since our first communication. The arrangement between my clients through which Hopscotch Health of NJ P.C. uses HOPSCOTCH in connection with Class 44 services accords both my clients common law rights, defrauds no one, and is a fair and administratively recognized basis establishing priority of use and basis for an in-use application. *See* 37 CFR §2.38; TMEP §903.05; *see also* 15 U.S.C. §1055 and 1127; TMEP §1201.03 and 1201.03(a); *and see Rockland Exposition, Inc. v. AASP Of New Jersey*, 894 F. Supp. 2d 288, 309-310 (S.D.N.Y. 2012).

Having now repeated, and now expressly, for at least the 9th time to the USPTO that such Hopscotch Health of NJ P.C.'s use inures to the benefit of the applicant, nothing is being withdrawn, and no quarter will be given in the face of such frivolous contentions. Indeed, those contentions (even if valid in any way, which they are not) in no way undermine the common law rights already established by Hopscotch Health of NJ P.C., whom the August 9th response failed to recognize as a complaining party, and Hopscotch Corp.

Then, in an equally inexplicable turn, the August 9th letter states that your client, admittedly founded in 2021, has some rights that "predate any possible use by Hopscotch Corp." We take it that such is the clever phrasing of a sophist, springing wholly from ignoring the earlier use by our client Hopscotch Health of NJ P.C. and that such use inures to its own and to Hopscotch Corp.'s benefit as a matter of law and fact.

If we do not hear from you or your client on or before August 22, 2022, my clients intend to seek other avenues of recovery including, but not limited to, litigation in Federal Court in New Jersey for injunctive relief, to recover damages for trademark infringement, as well as attorneys' fees based on your client's willful infringement.

Very truly yours,

James P. Flynn

cc: Kevin Elkins (via email)
    David Weiss (via email)

# EXHIBIT
# D



**EPSTEIN
BECKER
GREEN**

Attorneys at Law

James P. Flynn
t  973 639.8285
f  973 639.8931
JFlynn@ebglaw.com

August 25, 2022

**VIA EMAIL AND US MAIL**

Katherine Todd
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Katherine.todd@bassberry.com

   Re: Reply to August 22nd Response To Cease and Desist Letters Regarding Infringement
     of US Trademark Application, Serial No. 97435371 and Earlier Established Common
     Law Rights

Dear Ms. Todd:

   We appreciate Hopscotch Healthcare Inc.'s additional response on August 22, 2022, to the previous demands of my clients, Hopscotch Corp. and Hopscotch Health of NJ P.C., that Hopscotch Healthcare Inc. cease and desist promoting the same or similar services as our client by using the confusingly similar phrase/mark HOPSCOTCH HEALTH and "Hopscotch Healthcare, Inc."

   We are pleased to see that your client appears to be now interested in finding an amicable resolution —a desire which our clients share—through a direct conversation between our clients. So that we may be able to determine who best to include in that discussion from our clients' side, we would ask that you please provide a structure of the discussion points and what your client envisions as a potential resolution that will allay my clients' concerns of confusion.

August 25, 2022
Page 2

     This communication and any responses are subject to Fed. R. Evid. 408 and state counterparts. Once we have received your client's proposed structure, we will be happy to assist in scheduling a call with the appropriate representative(s) of Hopscotch Corp. and Hopscotch Health of NJ P.C..

     Very truly yours,

     James P. Flynn

cc: Kevin Elkins (via email)
    David Weiss (via email)